UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

SUE NELSON,

      Plaintiff,                          Case No.: 17-CV-466

v.

MILWAUKEE BREWING COMPANY,

      Defendant.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S NOVEMBER 10, 2017 REQUESTS FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES

Defendant, Milwaukee Brewing Company ("Milwaukee Brewing"), by its attorneys, Law Firm of Conway, Olejniczak & Jerry, S.C., responds to the Plaintiff's November 10, 2017 Requests for Production of Documents and Interrogatories as follows:

### GENERAL OBJECTIONS

1.      Defendant objects to Plaintiff's November 10, 2017 Requests for Production of Documents and Interrogatories ("Plaintiff's Discovery Requests") to the extent they purport to impose discovery obligations greater than those set forth in the Federal Rules of Civil Procedure.

2.      Defendant's objections and responses to Plaintiff's Discovery Requests are made without in any way waiving or intending to waive, but on the contrary, intending to preserve and preserving:

      a.    All questions as to competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose of the responses or subject matter thereof, in any subsequent proceeding, and in the trial of this or any other action;



b.  The right to object on any ground to the use of said responses or the subject matter thereof, in any subsequent proceeding, and in the trial of this or any other action; and

c.  The right to object on any ground at any time to other document requests or other discovery procedures involving or relating to the subject matter of these responses.

3.  Defendant objects to Plaintiff's Discovery Requests to the extent they seek documents, information or data, which are protected from disclosure by the attorney-client privilege, the work-product doctrine, and/or any other applicable privileges or immunities.

4.  Defendant's investigation of and discovery in this matter is continuing. The responses contained herein are based on and, therefore, necessarily limited by, the records and information still in existence, presently recollected, and thus far discovered. Defendant reserves the right to supplement or change these responses if omissions, errors or additional documents are subsequently discovered.

## DOCUMENT REQUESTS

REQUEST NO. 1:  All documents constituting, reflecting, referencing, or relating to any goal and/or incentive regarding enrollment in direct deposit by Defendant's employees.

RESPONSE: Milwaukee Brewing Company did not establish any goal and/or incentive regarding enrollment in direct deposit by Defendant's employees.

As for documents pertaining to enrolling in direct deposit, please refer to documents already produced in discovery, including e-mail communications produced by Greg Cardarelle during his deposition. Also refer to additional documentation on this topic which is attached hereto. (MBC00557)

REQUEST NO. 2:  All documents constituting, reflecting, referencing, or relating to late fees Defendant alleges were resultant of Plaintiff's mistake, negligence and/or oversight.

RESPONSE:  See attached documents. (MBC00470-MBC00483)

-2-

We object on the grounds that this discovery request is overly broad; the request does not place any limitation on relevant time frame. Plaintiff worked for Milwaukee Brewing Company in a capacity wherein she paid bills and invoices for a period of more ten (10) years. In addition, this request is not proportional to the needs of the case considering (1) the marginal importance of the materials to the claims and defenses in this litigation, (2) the importance of the discovery in resolving the issues, (4) the substantial time and cost for Milwaukee Brewing Company to identify additional responsive materials, and (5) the burden or expense of the proposed discovery outweighs its likely benefits. Subject to such objections, Milwaukee Brewing Company has attempted to review all accounts payable documentation that it still has in its possession (e.g., invoices, billings, etc.) for the period of January 1, 2014 through September 2016. However, based on the manner in which paid invoices and billings were recorded and/or filed, it has been extremely cumbersome to locate documents that reflect or reference late fees. Milwaukee Brewing Company also had a difficult time locating many of the invoices in order to decipher what late fees may have been assessed by the vendor.

REQUEST NO. 3: All documents maintained by James McCabe, secretly, confidentially, or otherwise, constituting, reflecting, referencing, or relating to Plaintiff, including, but not limited to, performance reviews and/or disciplinary actions.

RESPONSE: No responsive documents exist. Defendant, Milwaukee Brewing Company, has already responded to similar discovery requests and has reported that James McCabe does not have copies of any performance reviews and/or disciplinary actions in his possession.

REQUEST NO. 4: All documents constituting, reflecting, referencing, or relating to any accounting mistakes and/or errors Plaintiff allegedly made prior to her medical leave in 2015 that resulted in the removal and/or reassignment of her accounting duties.

RESPONSE: See attached documents (MBC00495-MBC00498), along with documentation of other mistakes made after Ms. Nelson's return from leave (MBC00499-MBC00509). Also refer to documentation provided in response to Milwaukee Brewing Company's responses to Plaintiff's June 28, 2017 Requests for Production of Documents and Interrogatories.

We object on the grounds that this discovery request is overly broad; the request does not place any limitation on relevant time frame other than to say prior to Ms. Nelson's medical leave in 2015. Plaintiff worked for Milwaukee Brewing Company in a capacity wherein she paid bills and invoices for a period of more than ten (10) years. In addition, this request is not proportional to the needs of the case considering (1) the marginal importance of the materials to the claims and defenses in this litigation and (2) the substantial time and cost to identify additional responsive materials balanced against the amount in controversy. Furthermore, Milwaukee Brewing Company did not record each mistake, nor did it make any effort to document every accounting mistake and/or error made by Ms. Nelson from the time she was hired through May 2015. Rather, when mistakes were discovered, they were corrected and hence there would not be any record of the original accounting mistake.

In 2015, Milwaukee Brewing Company, via the efforts of Michelle Urena and Marianne Anderson, began to document mistakes made by Ms. Nelson. Ms. Urena maintained a folder that contained documentation of Ms. Nelson's mistakes. Despite repeated requests for Ms. Urena to produce such folder, Ms. Urena has not produced the documents. Based on information from Ms. Urena's co-workers, Ms. Urena took the

-4-

folder home and/or destroyed the documents contained therein at some point after Ms. Nelson had filed the subject lawsuit. Subject to such objections, Milwaukee Brewing Company has reviewed documentation that it has in its possession for the period of January 1, 2014 through September 2016, including but not limited to accounting records and e-mail communications, in an attempt to find and produce responsive documents. Milwaukee Brewing Company has attached copies of the documents it has been able to locate to date and will supplement its responses if it discovers additional documents.

REQUEST NO. 5: All documents constituting, reflecting, referencing or relating to the alleged disorganization of the files Plaintiff maintained from 2014 until the time of her termination.

RESPONSE: See attached documents. (MBC00458-MBC00464).

Milwaukee Brewing Company objects to this request to the extent that it asks the company to recreate the disorganized files. As testified during depositions and earlier discovery requests, Milwaukee Brewing Company took steps to organize Ms. Nelson's files while she was out on medical leave; it did not take steps to document the state of the files (e.g., photographs, memo to file, etc.). Milwaukee Brewing Company also expended a great deal of time organizing and recreating personnel files after Ms. Nelson's termination. It would not have been prudent for Milwaukee Brewing Company to keep the files in a disorganized state after Ms. Nelson was terminated. Several of Ms. Nelson's former co-workers can attest to the disorganized and disheveled nature of Ms. Nelson's work space and her files.

REQUEST NO. 6: All documents constituting, reflecting, referencing, or relating to Plaintiff's alleged struggles with, unwillingness to learn, and/or rejection of using the Orchestrated Beer accounting system.

RESPONSE: See attached documents. (MBC00519-MBC00522). Milwaukee Brewing Company did not document Ms. Nelson's struggles with or unwillingness to

-5-

learn part of the Orchestrated Beer software package. Rather, Milwaukee Brewing Company relied on the statements made by Ms. Urena concerning Ms. Nelson's work within the Orchestrated Beer accounting system.

REQUEST NO. 7: All documents constituting, reflecting, referencing, or relating to any documents Plaintiff allegedly failed to file in employees' personnel files.

RESPONSE: See attached documents. (MBC00458).

Milwaukee Brewing Company objects to this request to the extent it requires Milwaukee Brewing Company to provide documentation of missing records or files; Milwaukee Brewing Company is not able to provide copies of documents that Ms. Nelson failed to place in an employee's personnel file. Ms. Zumstein can testify that when she started, several documents that should have been in the personnel files were not in such files and hence were missing. For example, employment applications were missing in several files even though the company required an application or resume for all new hires. Ms. Zumstein also discovered that several employees did not even have a personnel file, or at least, Ms. Zumstein could not locate a personnel file for numerous employees. As a result, Ms. Zumstein had to spend a considerable amount of time creating personnel files for employees that did not have a personnel file, including completion of new hire paperwork and I-9 forms. Ms. Zumstein also noted that several I-9s had missing information and/or had not been completed properly. With respect to the I-9s, Ms. Zumstein noted that Ms. Nelson had retained copies of the documentation presented by some employees at the time of completing the I-9s, but not all employees. In addition to the foregoing, Ms. Zumstein was not able to locate personnel files and/or other records the company was required to maintain for former employees and/or applicants for the requisite period of time. Furthermore, Ms. Zumstein can testify that

Ms. Nelson failed to comply with rules and regulations that required employers to

maintain confidential medical records separate from the remaining portions of an

employee's personnel file. When Ms. Zumstein started work at Milwaukee Brewing

Company, she found medical records commingled with other personnel records.

REQUEST NO. 8: All documents constituting, reflecting, referencing, or relating to
Plaintiff allegedly exhibiting passive aggressive behavior upon her return from medical leave in
2015.

RESPONSE: No responsive documents. Milwaukee Brewing Company did not

document such behavior by Ms. Nelson but rather relied on the information shared by

Ms. Nelson's co-workers, including but not limited to Michelle Urena.

REQUEST NO. 9: All documents constituting, reflecting, referencing, or relating to
Plaintiff allegedly imposing herself on her previous responsibilities upon her return from medical
leave in 2015.

RESPONSE: No responsive documents. Milwaukee Brewing Company relies on

the information shared by Ms. Nelson's co-workers, including but not limited to Michelle

Urena. It should be noted that while Ms. Nelson attempted to impose herself on her

previous responsibilities, Ms. Nelson also attempted to give away or reassign some of her

job duties to others.

REQUEST NO. 10: All documents constituting, reflecting, referencing, or relating to
Plaintiff allegedly exhibiting an "I don't give a shit" attitude upon her return from medical leave
in 2015.

RESPONSE: No responsive documents. Milwaukee Brewing Company relies

on the information shared by Ms. Nelson's co-workers, including but not limited to

Michelle Urena.

REQUEST NO. 11: All documents constituting, reflecting, referencing, or relating to
any and all errors, mistakes, and/or inaccuracies regarding contribution matching for Defendant's
401(k) plan from March 2016 to the present.

RESPONSE: See attached documents. (MBC00523-MBC00556). Also refer to documentation produced by Defendant in response to Plaintiff's June 28, 2017 Request for Production of Documents and Interrogatories. (MBC00182-MBC00290)

REQUEST NO. 12: All documents constituting, reflecting, referencing, or relating to Plaintiff's alleged failure to submit health insurance paperwork in a timely fashion.

RESPONSE: See attached documents. (MBC00484-MBC00494)

REQUEST NO. 13: All documents constituting, reflecting, referencing, or relating to Plaintiff's alleged failure to pay Defendant's 2014 personal property tax bill to the City of Milwaukee in a timely manner.

RESPONSE: Please refer to documentation provided as part of Milwaukee Brewing's Responses to Plaintiff's June 28, 2017 Requests for Production of Documents and Interrogatories. (MBC00127-MBC00128) Despite its efforts to locate the original invoice and communications with the City of Milwaukee's legal counsel concerning the late personal property tax bill, Milwaukee Brewing Company has been unable to locate such documents within the files that were maintained by Ms. Nelson. Milwaukee Brewing Company has only been able to locate the two pages it previously produced in discovery. This is another example that demonstrates Ms. Nelson's disorganized files as no one has been able to locate documentation that should be present at the Company. Milwaukee Brewing Company will supplement its responses if it should locate additional documentation on this issue as it continues to go through files.

REQUEST NO. 14: All documents constituting, reflecting, referencing, or relating to Plaintiff's alleged failure to update Defendant's Illinois liquor license in 2016.

RESPONSE: See attached documents. (MBC00465-MBC00469). Milwaukee Brewing Company has been unable to locate the original communications and/or invoice from the State of Illinois for the 2016 liquor license. Such documentation does not

-8-

appear to have been included in the files previously maintained by Ms. Nelson. The liquor license expires on February 28th of each year and, therefore, Milwaukee Brewing Company would have received the invoice and necessary documentation from Illinois in early January.

REQUEST NO. 15: All documents constituting, reflecting, referencing, or relating to emails between Plaintiff and Michelle Urena regarding Defendant's Illinois liquor license in 2016.

RESPONSE: See attached documents. (MBC00465-MBC00469)

Milwaukee Brewing Company has been unable to search Ms. Nelson's e-mails for any such communication as her account was deleted shortly after her termination of employment. Milwaukee Brewing Company uses Google's free e-mail service and, therefore, does not have any archives or backup copies of Ms. Nelson's e-mails. Because the Company is only allowed so many e-mail users via Google's free service, it deleted Ms. Nelson's email account to free up an account for a new user.

As for Ms. Urena's e-mails, Milwaukee Brewing Company conducted a search of her e-mail account. We have provided the few e-mails that we were able to locate in her account. It appears that Ms. Urena deleted a significant portion of her e-mail account prior to her resignation as there are big gaps of time missing. It also appears that Ms. Urena deleted other documents from her computer prior to her resignation. Any documents that were not saved to the Company's server, but rather directly saved on Ms. Urena's computer/desktop, would not be included on any backup of the company server and, therefore, cannot be produced by Milwaukee Brewing Company.

REQUEST NO. 16: All documents, including document properties, contained in file(s) regarding Nicole Zumstein at the time of her hire, including but not limited to, resume(s), application(s), interview notes, phone messages, job description(s), job posting(s), and all

records of any kind contained therein. Plaintiff hereby stipulates to limit use of such documents for this litigation only.

      <u>RESPONSE</u>:  See attached documents. (MBC00562-MBC00566; MBC00569;

MBC00573-MBC00574).  Milwaukee Brewing Company did not post for the Human

Resources Director position, nor did it have any type of job description in place at the

time it hired Ms. Zumstein for the position.

    <u>REQUEST NO. 17</u>:  All documents regarding, related to, referencing, or in any way discussing the recruitment of Nicole Zumstein

      <u>RESPONSE</u>:  See response to Request No. 16.

    <u>REQUEST NO. 18</u>:  All documents regarding, related to, referencing, or in any way discussing the hiring of Nicole Zumstein.

      <u>RESPONSE</u>:  See response to Request No. 16.

    <u>REQUEST NO. 19</u>:  All documents constituting, reflecting, referencing, or relating to communications between F Street Capital and Defendant regarding, related to, referencing, or in any way discussing the recruitment and/or hiring of Nicole Zumstein.

      <u>RESPONSE</u>:  Milwaukee Brewing Company has conducted a search of its

computer server, including Mr. McCabe's e-mails, and has not been able to locate copies

of any communications between F Street Capital and Milwaukee Brewing Company

concerning the recruitment and/or hiring of Nicole Zumstein.  Milwaukee Brewing

Company has asked F Street Capital to review its e-mails as well to determine if it has

any such documentation and/or communications.  F Street Capital provided the

documents attached as MBC00573-MBC00575 and has advised us that it does not have

any additional documentation on this issue.

    <u>REQUEST NO. 20</u>:  All documents by which the value of Nicole Zumstein's wages paid by Defendant may be calculated.

RESPONSE: See attached documents. (MBC00567-MBC00568). Milwaukee

Brewing Company hired Ms. Zumstein at a starting salary of $52,000. On or about

October 29, 2017, Milwaukee Brewing Company increased Ms. Zumstein's salary to

$53,750.

REQUEST NO. 21: All documents by which the value of Nicole Zumstein's benefits
provided by Defendant may be calculated.

RESPONSE: See attached documents (MBC00567 - MBC00568). As of

December 1, 2016, Ms. Zumstein was eligible for health, dental and vision insurance.

Ms. Zumstein is not eligible for 401(k) benefits until January 1, 2018.

REQUEST NO. 22: All documents supporting each denial, if any, to the Requests to
Admit.

RESPONSE: See attached documents.

REQUEST NO. 23: All documents referred to or relied upon to answer the
Interrogatories and Requests to Admit below.

RESPONSE: See attached documents. (MBC00458-MBC00575)

## INTERROGATORIES

INTERROGATORY NO. 1: Identify by date, time, place, event, and witnesses, any and
all accounting mistakes and/or errors Plaintiff allegedly made prior to her medical leave in 2015
that resulted in and/or contributed to the removal and/or reassignment of her accounting duties.

ANSWER: Please refer to Milwaukee Brewing Company's earlier responses to

Plaintiff's June 28, 2017 Requests for Production of Documents and Interrogatories, and

the documentation it provided as part of its response.

Milwaukee Brewing Company objects to this interrogatory on the grounds that it

is overbroad as it places no limitation on relevant time frame but rather appears to request

Milwaukee Brewing Company to identify all mistakes made between 2006 (year Ms.

Nelson was hired) and May 2015. In addition, this request is not proportional to the

-11-

needs of the case considering (1) the marginal importance of the materials to the claims and defenses in this litigation, (2) the importance of the discovery in resolving the issues, (4) the substantial time and cost for Milwaukee Brewing Company to identify additional responsive materials, and (5) the burden or expense of the proposed discovery outweighs its likely benefits. Milwaukee Brewing Company does not need to establish each and every accounting mistake made by Ms. Nelson in order to justify its business decision to restructure Ms. Nelson's position and/or terminate her employment in September 2016. Milwaukee Brewing Company had a good faith belief that Ms. Nelson did not have the appropriate skillset for the financial accounting tasks that were required for the brewery operations when it made the decision to restructure Ms. Nelson's position. In addition, it became very apparent to Milwaukee Brewing Company that Ms. Nelson was overwhelmed by the Company's expectations of her and the tasks that she was performing prior to her medical leave, as Ms. Nelson herself admits, and, therefore, changes needed to be made including the hiring of additional assistance for the accounting tasks. Milwaukee Brewing Company made the decision to restructure Ms. Nelson's position for legitimate, non-discriminatory business reasons, reasons that had nothing to do with Ms. Nelson's medical leave; it is fair to say that the company would have made such changes regardless of Ms. Nelson's medical leave as both Ms. Urena and Ms. Nelson believed they needed additional assistance.

As for assessing the type of mistakes made by Ms. Nelson, as well as assessing Ms. Nelson's capabilities, Mr. McCabe relied on information that was communicated to him by his management team, including Michelle Urena, and Marianne Anderson, as he was not an accountant.

Milwaukee Brewing Company, with the assistance of Ms. Urena and Ms.

Anderson, discovered errors and mistakes while Ms. Nelson was on leave. Mr. McCabe

and Ms. Anderson ultimately asked Ms. Urena to maintain a file that contained copies of

documents reflecting some of the mistakes it had discovered. If either of them discovered

a significant mistake, they would ask Ms. Urena to place the document in the file. It was

their understanding that Ms. Urena did in fact maintain such a file but Milwaukee

Brewing Company has been unable to locate such file. Upon information and belief, Ms.

Urena either took that file with her when she abruptly resigned from the company and/or

deleted the documentation contained therein.

Furthermore, it is impossible to document each and every accounting mistake

and/or error Ms. Nelson made prior to her medical leave in 2015. Milwaukee Brewing

Company did not record or document each mistake; if a mistake was discovered, it took

the necessary steps to correct it. There were also situations where the owner was not

made aware of mistakes as Ms. Urena or Ms. Anderson would have simply corrected the

mistake they had discovered; they would not report all mistakes to Mr. McCabe.


INTERROGATORY NO. 2: Identify by date, time, place, event, and witnesses, any and all instances of Plaintiff's alleged disorganization of files she maintained from 2014 until the time of her termination.

ANSWER: Please refer to Milwaukee Brewing Company's responses to

Plaintiff's June 28, 2017 Requests for Production of Documents and Interrogatories,

along with the documentation provided in response thereto. Also refer to the attached

documents which reflect Ms. Nelson's disorganization.

-13-

Furthermore, it should be noted that it is near impossible to identify by date, time, place, event and witnesses, any and all instances of Ms. Nelson's disorganization of files. The disorganization referred to by Milwaukee Brewing Company in its earlier discovery responses, as well as its deposition testimony, concerned the general state of Ms. Nelson's work space and files. The disorganization was not something that occurred from time to time but rather was the overall state of Ms. Nelson's work space and filing.

Not only did Ms. Nelson's co-workers note that Ms. Nelson's filing was disorganized and/or that it was difficult to locate things when Ms. Nelson was out, outside vendors had similar observations. Vendors who visited Ms. Nelson in the course of providing services to the company (e.g., insurance representatives), noted that Ms. Nelson's workspace was disorganized.

The following is an example of Ms. Nelson's disorganization. When Milwaukee Brewing Company terminated Ms. Nelson's employment in September 2016, the company was already in the process of working on health insurance renewals. Ms. Nelson had been working with Tina Gruenstern of Robertson Ryan (the insurance company Milwaukee Brewing Company worked with) on the health insurance renewals, including the scheduling and planning of employee meetings. Prior to the termination of Ms. Nelson's employment, Ms. Nelson and Ms. Gruenstern had scheduled the employee meetings for September 21, 2016. September 21, 2016 was Ms. Zumstein's first day on the job. Although Ms. Nelson should have had everything together and ready for the employee meetings, including information about employee deductions (as she did not know about the Company's decision to terminate her employment until September 20, 2016), none of the information for the employee meetings appeared to be ready. Ms.

-14-

Zumenstein was not able to locate information concerning employee deductions or the

renewals. It took Ms. Zumenstein a lot of time to figure out what was going on with the

health insurance renewals as Ms. Nelson did not have all of the information in an easily

located file or other organized manner.


INTERROGATORY NO. 3: Identify by date, time, place, event, and witnesses, any and all instances of Plaintiff's alleged struggles with, unwillingness to learn, and/or rejection of using the Orchestrated Beer accounting system.

ANSWER: Ms. Nelson personally told her co-workers, including Ms. Urena,

that she did not want to learn certain parts of the Orchestrated Beer software. Ms. Urena

had communicated to Mr. McCabe and Marianne Anderson on several occasions that Ms.

Nelson did not want to use or learn the new software. Based on the information Ms.

Urena had shared with Mr. McCabe, it was his understanding that Ms. Nelson was not in

favor of the change to the new software package and she did not want to learn the

software. It was also Mr. McCabe's understanding that Ms. Nelson refused to do certain

tasks with the software. Milwaukee Brewing Company board members recall Mr.

McCabe informing them that Ms. Nelson was resistant to the changes and was refusing to

fully learn the software.

Milwaukee Brewing Company did not document Ms. Nelson's struggles with,

unwillingness to learn and/or her rejection of the Orchestrated Beer accounting system. It

can only recall discussions with Ms. Nelson's co-workers about the challenges Ms.

Nelson was apparently having with the new software. Furthermore, Milwaukee Brewing

Company cannot recall by date and time all instances it was informed by Ms. Urena and

others that Ms. Nelson was struggling with the new system and/or otherwise refusing to

learn the system.

Case 2:17-cv-00466-PP   Filed 12/27/17   Page 15 of 23   Document 16-1

INTERROGATORY NO. 4: Identify by date, time, place, event, and witnesses, any and all instances of Plaintiff allegedly failing to file documents in employees' personnel files.

ANSWER: Milwaukee Brewing Company is unable to specifically identify by date, time, place, event and witnesses, any and all instances Ms. Nelson failed to file documents in employees' personnel files. However, Ms. Nicole Zumstein can testify that when she started in her role as Human Resources Director that the personnel files were very disorganized and that a significant portion of the files were missing key documents including job applications or resumes, I-9 forms, insurance enrollment forms, etc. Ms. Zumstein also discovered that there were no personnel files for several employees and hence she needed to create new personnel files for such employees. Ms. Nelson also failed to retain personnel files and employment records for former employees per state and federal rules and regulations. For example, Ms. Nelson discovered that Ms. Nelson was not retaining personnel files and/or I-9s for former employees for at least one-year post termination. Ms. Nelson was also not maintaining job applications or other documents considered in hiring decisions for at least one year after a hiring decision had been made.

INTERROGATORY NO. 5: Identify by date, time, place, event, and witnesses, any and all instances of Plaintiff allegedly exhibiting passive aggressive behavior upon return from medical leave in 2015.

ANSWER: Milwaukee Brewing Company does not have any documentation that would allow it to identify by date, time, place, event and witnesses of any instances wherein Ms. Nelson exhibited passive aggressive behavior upon her return from medical leave in 2015. Ms. Urena had mentioned this to Milwaukee Brewing Company on a few occasions after Ms. Nelson returned to work, including via the Company's legal counsel. As an example of passive aggressive behavior, Ms. Urena reported that when Ms. Nelson

returned from her medical leave, Ms. Nelson gave away some of her job duties that the company had not taken away from her; Ms. Nelson would then would turn around and make statements along the lines of "they took all of my job duties away."

INTERROGATORY NO. 6: Identify by date, time, place, event, and witnesses, any and all instances of Plaintiff allegedly imposing herself on her previous responsibilities upon her return from medical leave in 2015.

ANSWER: Milwaukee Brewing Company does not have any documentation that would allow it to identify by date, time, place, event and witnesses of any instances wherein Ms. Nelson imposed herself on her previous responsibilities upon her return from medical leave in 2015. Ms. Urena had informed Mr. McCabe of this on several occasions after Ms. Nelson returned to work.

INTERROGATORY NO. 7: Identify by date, time, place, event, and witnesses, any and all instances of Plaintiff allegedly exhibiting an "I don't give a shit" attitude.

ANSWER: Milwaukee Brewing Company does not have any documentation that would allow it to identify by date, time, place, event and witnesses of any instances wherein Ms. Nelson exhibited an "I don't give a shit" attitude. Ms. Urena communicated this information to Milwaukee Brewing Company, including its legal counsel as counsel was investigating the merits of Ms. Nelson's pending lawsuit.

Outside vendors that worked with Ms. Nelson also reported that Ms. Nelson's attitude was different when she returned from her medical leave. For example, one vendor, Tina Gruenstern of Robertson Ryan, reported that Ms. Nelson was bitter when she returned to work and was not herself. Ms. Gruenstern also reported that Ms. Nelson did not like change and that it was challenging to get things done via Ms. Nelson. Ms. Gruenstern provided an example wherein she and her team from Robertson Ryan put

together a wellness program for Milwaukee Brewing Company; per Ms. Gruenstern, Ms. Nelson fought the wellness program tooth and nail even though Ms. Urena and others were in favor of it.

INTERROGATORY NO. 8: Identify by date, time, place, event, and witnesses, any and all errors, mistakes, and/or inaccuracies regarding contribution matching for Defendant's 401(k) plan from March 2016 to the present.

ANSWER: The errors in 401(k) reporting began in April 2015, prior to Ms. Nelson's injury and medical leave. As part of her payroll responsibilities, Ms. Nelson was responsible for ensuring that the books matched what was being taken out of each employee's paycheck and being forwarded to the 401(k) company. In other words, Ms. Nelson was responsible for double checking and reconciling that the amount charged by the payroll processing company was actually being paid out. Ms. Anderson brought the issue with 401(k) contributions to Ms. Nelson's attention on several occasions; it was apparent that Ms. Nelson was not reviewing the records and catching the mistakes in a timely fashion, thereby allowing them to continue and not be resolved promptly. The failure to catch the payroll processing company's mistakes in a timely fashion led to situations where the company had to make extra contributions to compensate for the interest and/or earnings that the employee did not receive on their 401(k) contributions. The mistakes made continued into 2016; Ms. Nelson, Ms. Urena and Ms. Anderson were still dealing with the mistakes during the spring and summer of 2016. (See attached documents provided in response to Request for Production No. 11)

As for the 401(k) contributions since Ms. Zumstein has taken over, Ms. Zumstein has audited the payroll accounting records to ensure that all of the deductions withheld from employees' payroll checks have been properly forwarded and paid to the 401(k) management company for application towards the employees' individual 401(k)

-18-

accounts. Mistakes made by the payroll processing company have been resolved in a more timely fashion.

INTERROGATORY NO. 9: Identify by date, time, place, event, and witnesses, any and all communications made by or to Defendant regarding Nicole Zumstein's recruitment and/or hiring.

ANSWER: During the summer and fall of 2016, Milwaukee Brewing Company was involved in several projects that required changes in the way the company was being managed. Among the projects were refinancing, the acquisition of another brewery, and the restructuring of real estate owned by the company to allow a distillery to be constructed next door. The Board of Directors had several discussions about the projects and the changes that would need to be made internally to ensure success. These discussions included discussions about staffing, particularly at the management level. There were discussions about whether the current employees and managers had the appropriate skillset for taking the company to the next level. Based on such discussions, the board and Mr. McCabe agreed that changes needed to be made and that the Company needed to bring in new talent if the Company was to grow and succeed. Among the changes, Milwaukee Brewing Company determined that it needed someone who could better handle the human resource functions and responsibilities. It was not believed that Ms. Nelson had the necessary skillset; she had not demonstrated through her performance that she had a firm grasp or understanding of what the company should be doing on the HR side to better support its employees and to protect the company. In fact, when F Street Capital was assessing the situation, they were under the impression that no one was serving in an HR role and that the lack of HR assistance was a significant gap in the Company's business operations. Ultimately, it was decided that they would look to hire another individual in a newly created human resources director role.

-19-

To assist them with the anticipated growth and restructuring, Milwaukee Brewing Company brought in the assistance of F Street Capital. Todd Gruen and Scott Lurie of F Street Capital were involved in analyzing the current business structure and systems, and making recommendations for improvements.

Scott Lurie introduced Nicole Zumstein to Mr. McCabe and Milwaukee Brewing Company in August 2016. Mr. Lurie informed Ms. Zumstein of the opportunity and had made arrangements for her to interview with Mr. McCabe. After Milwaukee Brewing Company made the decision to hire Ms. Zumstein, Mr. Lurie worked with Milwaukee Brewing Company to communicate the company's decision and assisted with the preparation and delivery of the job offer letter to Ms. Zumstein. See documents attached in response to discovery request above.

At the time of interviewing Ms. Zumstein for employment (i.e., August 2016), Milwaukee Brewing Company had not yet made a decision as to whether it would terminate Ms. Nelson's employment. The Company was still evaluating whether it would have an appropriate role for Ms. Nelson within what was to be its restructured and expanded business.

In addition to the feedback and input of the board of directors and F Street Capital, Ms. Urena had made comments to Mr. McCabe about her concerns about the manner in which Ms. Nelson was handling, or not handling, HR issues. Ms. Urena repeatedly brought up the fact that Milwaukee Brewing Company needed someone with true HR experience as she saw the HR role under Ms. Nelson as a big gap and potential liability exposure.

INTERROGATORY NO. 10: Identify by date, time, place, event, and witnesses, all facts that resulted in the recruitment and/or hiring of Nicole Zumstein.

ANSWER: See Response to Interrogatory No. 9, above.

INTERROGATORY NO. 11: Identify by date, time, place, event, and witnesses, all communications made by or to Defendant regarding the recruitment and/or hiring of Nicole Zumstein.

ANSWER: See response to Interrogatory No. 9, above.

INTERROGATORY NO. 12: Identify by date, time, place, event, and witnesses, all communications between Defendant and F Street Capital regarding the recruitment and/or hiring of Nicole Zumstein.

ANSWER: See response to Interrogatory No. 9, above.

INTERROGATORY NO. 13: Identify any and all reason(s) for hiring Nicole Zumstein as Human Resources Director.

ANSWER: Milwaukee Brewing Company believed that Ms. Zumstein possessed

the proper skills and attributes to fill the Human Resources Director position. Ms.

Zumstein was able to effectively communicate during her interview HR issues that she

would be able to assist the company with, issues that were not currently being addressed.

Ms. Zumstein also had schooling and certifications directly related to human resources

management. Ms. Zumstein had prior HR experience in a manufacturing environment.

Furthermore, Ms. Zumstein came highly recommended by Mr. Lurie of F Street Capital.

INTERROGATORY NO. 14: Identify the individual(s) who made or had input into the decision to hire Nicole Zumstein, including the date that decision was made and the person(s) who made the final decision.

ANSWER: Jim McCabe made the final decision. He relied on the input of Scott

Lurie of F Street Capital. Milwaukee Brewing Company extended an offer of

employment to Ms. Zumstein on August 15, 2016.

INTERROGATORY NO. 15: Identify the pay rate and the nature and the amount of any and all benefits awarded to and/or earned by Nicole Zumstein since her employment began with Defendant.

-21-

ANSWER: Milwaukee Brewing Company hired Ms. Zumstein at an annual

salary of $52,000. In addition to her salary, Milwaukee Brewing Company awarded Ms.

Zumstein three (3) weeks of vacation. As of December 1, 2016, Ms. Zumstein was

eligible for health, dental and vision insurance. Ms. Zumstein is not eligible for 401(k)

benefits until January 1, 2018.

On or about October 29, 2017, Milwaukee Brewing Company increased Ms.

Zumstein's salary to $53,750.

INTERROGATORY NO. 16: Identify by date, time, place, event, and witnesses, all
facts supporting each of your denials, if any, to Plaintiff's Requests to Admit below.

ANSWER: Please refer to Milwaukee Brewing Company's responses to

Plaintiff's Requests to Admit.

INTERROGATORY NO. 17: Identify each individual consulted in creating the answers
to these interrogatories and documents requests and identify the specific response for which each
individual supplied information.

ANSWER: James McCabe, Marianne Anderson, Nicole Zumstein, and Rob

DeJong.

INTERROGATORY NO. 18: Identify all documents used to answer these
Interrogatories.

ANSWER: See attached documents, along with documents attached to

Milwaukee Brewing Company's responses to Plaintiff's June 28, 2017 Requests for

Production of Documents and Interrogatories.

INTERROGATORY NO. 19: Identify the location of any documents requested in the
Document Requests above, which the Defendant knows to exist, but does not currently possess
or control.

ANSWER: As stated above, Mr. McCabe and Ms. Anderson had provided

documentation of some of Ms. Nelson's mistakes to Ms. Urena and asked her to maintain

such documentation in a folder. It was Mr. McCabe and Ms. Anderson's understanding

and belief, confirmed by some of Ms. Urena's former co-workers, that Ms. Urena was in

fact maintaining such a file that had documentation of numerous examples of mistakes

made by Ms. Nelson. Despite repeated requests for the folder, Ms. Urena failed to turn it

over to management or legal counsel. It has been reported that Ms. Urena took the folder

home and/or destroyed the documentation contained in such folder.

INTERROGATORY NO. 20: Identify all documents previously, but no longer within
Defendant's possession, custody, or control, which, if they had remained within your possession,
custody, or control, would have been subject to being identified. To the extent that any
documents that Plaintiff has requested to be identified and/or produced as part of this discovery
requests are no longer available to be produced by you, supply a full explanation as to why each
is not available, when it became unavailable, what happened to it, and who destroyed it or
otherwise made it unavailable, and state all that you know about the document(s), including its
approximate date, contents, authorship, recipients, if any, and ultimate disposition.

ANSWER: See responses above.

Dated this 22nd day of December, 2017.

LAW FIRM OF CONWAY, OLEJNICZAK & JERRY, S.C.
Attorneys for Defendant, Milwaukee Brewing Company


_____
Jodi Arndt Labs
State Bar No. 1033359

POST OFFICE ADDRESS:
231 South Adams Street
P.O. Box 23200
Green Bay, WI 54305-3200
(920) 437-0476
jodi@lcojlaw.com